FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 DEC 15 PM 2: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| MARTHA L. CLAUGHTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NATIONAL WEIGHT LOSS CENTERS OF )<br>ALABAMA, INC., )<br>)<br>Defendants. ) | CV 97-BU-2577-S<br><br>ENTERED<br>DEC 15 1998 |

## Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by the defendant, National Weight Loss Centers of Alabama, Inc. ("NWLC"), on November 2, 1998. In its motion, the defendant contends that the plaintiff, Martha L. Claughton ("Claughton"), cannot state claims of discriminatory termination in violation of Title VII the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, and that she did not receive overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of

28

law. FED. R. CIV. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The movant's burden is not meager; it must illuminate for the court the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. *Cf. Mesnick v. General Elec. Co.*, 950 F.2d 816, 820 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id. See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*, — U.S. —, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235,

1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (*citing Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

Facts

In May of 1996, the plaintiff was hired as a counselor at NWLC's Vestavia Hills location. Within two months after being hired by the defendant, on July 29, 1996, she was promoted to the position of Manager and was assigned to manage NWLC's Inverness location and oversee the employees who worked there. While the plaintiff had discretion in setting her own work schedule and was permitted to make *one* decision regarding which of her two subordinates would be promoted, her authority was allegedly limited in other matters. The plaintiff was not given authorization to hire or fire subordinates. Further, Claughton did not have the authorization to give raises. Purportedly, her regional supervisor, Deborah Richardson ("Richardson"), would call five, six, seven or eight times a day checking up on the plaintiff. When she called and Claughton was not available, Richardson would ask for her location. On average, Richardson visited the plaintiff's center once every week.

In September of 1996, Richardson received a complaint from Kanika McIntyre, an extremely irate client of the Inverness Center. According to the plaintiff, a woman who knew a client at the Inverness Center called and spoke to a worker who referred to herself as "Brenda." During the course of a conversation with Ms. Hale, "Brenda" disclosed that Kanika McIntyre was a client. Ms. Hale told Ms. McIntrye of the phone conversation.[1] McIntrye first spoke with Phyllis Leuck, the

---

[1] According to the defendant, Ms. McIntyre's name was not disclosed during a phone call. According to defendant, McIntyre told Richardson that her full name was disclosed on a display board within the Inverness Center and that an individual who knew McIntyre had come into the center and had seen her name on the board.

Area Supervisor, and later had several conversations with Richardson about the incident. McIntyre complained that the disclosure of her name caused her humiliation and embarrassment within her community, that she wanted to quit her weight loss program with a full refund and that she would seek legal action against NWLC.

Richardson contacted the plaintiff by telephone, informed her of the complaint, and asked her for help in determining how McIntyre's name was disclosed. During this conversation, the plaintiff told Richardson that she did not have any idea how McIntyre's name could have been disclosed, that she did not think her employees would disclose such information, and that her employees knew better than to disclose such information. Nonetheless, Richardson requested the plaintiff to talk with her employees about the disclosure.

Claughton talked with her two subordinates, Brenda Moore ("Moore") and Brenda Kimbrough ("Kimbrough") about the disclosure. Each responded that she had not disclosed a client's name and did not know how the name might have been released. The plaintiff relayed to Richardson that her employees did not know how McIntyre's name had been disclosed. Richardson called Plaintiff a few days later to ask the plaintiff to further investigate the disclosure because McIntyre remained upset and continued to threaten legal action against NWLC. Again, the plaintiff responded that she did not have any information and that neither of her subordinates had released the client's name. Leuck then called the plaintiff to ask her if she had any information about the disclosure. Claughton told Leuck that she had no indication as to who had released the client's name.

Shortly after the plaintiff's conversations with Richardson and Leuck, Kimbrough told the plaintiff that if someone had asked her whether Ms. McIntrye was a client of the clinic, she might have answered "yes." However, Kimbrough was not sure that she had, in fact, disclosed Ms. McIntyre's name. In response to Kimbrough's tentative confession, the plaintiff told Kimbrough, "[I]f you're not sure you did it, then, you know, there's nothing to it and you have nothing to admit to." The plaintiff did not further press Kimbrough on the issue. Her only information concerning the disclosure being mere speculation, Claughton chose not to report the conversation to anyone.

Later, Kimbrough informed Richardson that she had disclosed McIntyre's name. Allegedly, Kimbrough also told Richardson that the plaintiff was aware of this and had told Kimbrough to deny

disclosing the client's name.[2] According to the plaintiff, Richardson then instructed Moore, the other counselor at Inverness under Plaintiff's supervision, to draft a letter stating that she had heard the plaintiff tell Kimbrough to deny disclosing Ms. McIntyre's name.

A few days later, Richardson terminated the plaintiff, presenting as reasons for the plaintiff's termination the plaintiff's lack of candor with regard to who had disclosed the client's name and ensuring that no further disclosures occurred. According to the defendant, the plaintiff's decision to hold back information relating to Ms. McIntyre's complaint destroyed Richardson's trust in the plaintiff as a Manager. Richardson also informed the plaintiff that both of her subordinates had signed statements relating to the plaintiff's withholding of the information and to the plaintiff's instructions to Kimbrough not to report that she had disclosed the client's name.

Claughton alleges that the defendant does not have a written document setting out the circumstances justifying immediate termination. Instead, NWLC apparently has a step discipline plan, which Richardson allegedly did not follow in firing the plaintiff. According to the plaintiff, no earlier documented warnings contained in her file entered into the decision to terminate her employment; only the incident involving the disclosure of Ms. McIntyre's name was considered.

Purportedly, after the plaintiff was terminated, Richardson told Kimbrough that Claughton did not "fit in" with the clientele at the Center. Richardson also allegedly remarked that the white clientele did not accept people of the plaintiff's caliber and that she would hire no more blacks into the center because the patients are "'not going to accept them, and I do not want to have any more blacks here.'" Affidavit of Kimbrough at 2. Richardson then offered Kimbrough the plaintiff's position. Although Kimbrough initially refused, she eventually accepted the position.

At the time of her employment with NWLC, the plaintiff received a guaranteed minimum salary of $550.00 per week and sometimes received an additional commission which was tied to the performance of her center. NWLC's other center Managers in the Birmingham area (two white females) were only paid a guaranteed base salary of only $200.00 per week plus the same commissions. According to the plaintiff, her job as a Manager was not substantially different from that of her suborns. Like them, she spent the majority of her time answering the phone, making sales and doing counseling work. Purportedly, less than 50% of the plaintiff's time was actually spent

---

[2] Apparently, Kimbrough was never disciplined because of the disclosure of the client's name.

engaged in duties different from that of the counselors. Nonetheless, contends the plaintiff, while the defendant did not treat the counselors as overtime exempt employees under the Fair Labor Standards Act ("FLSA"), it did treat her as an exempt employee and chose not to pay her overtime.

## Contentions & Analysis

The plaintiff asserts a claim of discriminatory termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and a claim that the defendant did not provide her with overtime pay in violation of the FLSA, 29 U.S.C. § 201, *et seq.* The defendant contends that the plaintiff fails to present a genuine issue of triable fact on either claim.

DISCRIMINATORY TERMINATION.

In a discrimination suit, a plaintiff can make her case either through giving direct evidence, "such as age-biased [or gender-biased] statements made by the decision maker," by use of circumstantial evidence or "by presenting a statistical pattern of discrimination." Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1457 (11th Cir. 1997). See also Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). In the instant case, the plaintiff asserts that she can raise both a direct evidence case and circumstantial evidence case of discrimination.

Direct evidence of discrimination is evidence which, without inference or presumption, could lead a trier of fact to conclude that discrimination occurred. *Carter v. City of Miami*, 870 F.2d 578, 580-81 (11th Cir. 1989). Because "direct evidence of discrimination is powerful evidence capable of making out a prima facie case essentially by itself," the Eleventh Circuit Court of Appeals "has marked severe limits for the kind of language to be treated as direct evidence of discrimination." *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998). A few isolated words unrelated to the employee's position or to a relevant hiring, promotion or termination decision will not create direct evidence. *Id.* Further, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Services, Inc.*, — F.3d —, —, 1998 WL 834520 at *11 (11th Cir. 1998). Nonetheless, in the instant case, there appears to be direct evidence of discrimination. The plaintiff contends that Richarson's alleged statements that Claughton did not "fit in" with the clientele at the Center; that the white

clientele did not accept people of the plaintiff's "caliber"; and that she would hire no more blacks into the center because the patients are "'not going to accept them, and I do not want to have any more blacks here'" all provide direct evidence of discrimination. Richardson's alleged statements were made in such close proximity to her decision to terminate the plaintiff, that no intermediate inference to a discriminatory motive is required. An intention to discriminate in the selection of Managers at NWLC's operations within Richardson's control, particularly with respect to the plaintiff, can be read directly from the plain language of Richardson's utterances.

"If a plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent." *Standard v. A.B.E.L. Services, Inc.*, — F.3d at —, 1998 WL 834520 at * 10. The defendant has not attempted to demonstrate that in the absence of discriminatory intent, the same decision would have been made. Therefore, summary judgment will be denied on the discriminatory termination claim.

OVERTIME PAY.

Section 207(a)(1) of Title 29 requires that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *See also Davis v. City of Hollywood*, 120 F.3d 1178, 1179 (11th Cir. 1997). The plaintiff here seeks compensation for overtime worked while she was an employee of NWLC. Defendant argues that the plaintiff is exempt from the FLSA's overtime pay requirements because she was employed in an executive capacity at its Inverness Center. In *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997), the Eleventh Circuit Court of Appeals stated:

> The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity" who receives payment on a salary basis. §29 U.S.C. 213(a)(1)(1994); *see also Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994). Exemptions under the FLSA, however, are to be construed narrowly. *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 368 [] (1997). Indeed, the employer has the burden of showing that it is entitled to the exemption. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

"[T]o claim exemption from the FLSA's overtime pay requirements pursuant to section 213(a)(1), an employer must prove that the relevant employees meet two tests: the job duties test and the salary basis test." *Davis v. City of Hollywood,* 120 F.3d at 1179. While the parties apparently agree that the plaintiff meets the salary test, they dispute whether she satisfies the job duties test. The regulations promulgated pursuant to the FLSA define executive capacity:

> The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the act shall mean any employee:
> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
> (d) Who customarily and regularly exercises discretionary powers; and
> (e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20- percent interest in the enterprise in which he is employed; and
> (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

29 C.F.R. § 541.1. The defendant apparently admits that the plaintiff did not have the authority to hire or fire employees, as is required under subsection (c). *See* Defendant's Reply to Plaintiff's Response to its Motion for Summary Judgment at 3. Because the ability to hire or fire is a necessary requirement of being deemed "employed in a bona fide executive . . . capacity" under the FLSA, the defendant's contentions that the plaintiff is not eligible for overtime pay fail.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment will be DENIED.

DONE and ORDERED this 15th day of December, 1998.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE